UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:19 CR 207 HEA |
| | ) | |
| TRAVIS BROEKER, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO MOTION IN LIMINE RE: ADMISSION OF CERTAIN EVIDENCE**

Comes now the United States of America, by and through its attorneys, Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and Sirena Miller Wissler and Nauman Wadalawala, Assistant United States Attorneys for said District, hereby replies to the response filed by defendant Travis Broeker to the government's Motion in Limine Re: Admission of Certain Evidence. (Doc. #123).

**STATEMENT OF RELEVANT FACTS**

On or about March 14, 2019, a duly empaneled Grand Jury sitting in the Eastern District of Missouri returned an Indictment against defendant Travis Broeker ("Broeker") and co-defendant Pamela Barton ("Barton"), charging Broeker with Distribution of Fentanyl Resulting in Death and both defendants with Conspiracy to Distribute Fentanyl. Broeker learned of his federal indictment while he was incarcerated in the St. Louis County Jail on an unrelated charge. Almost immediately thereafter, Broeker began engaging in telephone conversations with Barton, his grandmother, and K.S., with whom Broeker shares a child. During these calls, which were recorded by the St. Louis County Jail in accordance with their policies and procedures, Broeker

1

spoken openly about the pending federal charge and his involvement in selling drugs to victim T.Z.

For her part, Barton successfully evaded arrest for approximately 8 days. She and Broeker spoke on the telephone about her efforts to avoid police. On March 22, 2019, investigators located Barton and arrested her. Coincidentally, on the same date, Magistrate Judge David D. Noce issued an Order of Detention Pending Trial in which he granted the government's motion for pre-trial detention as to Broeker. (Doc. #16).  Barton was admitted to bond.  As a condition of that bond, Magistrate Judge Noce ordered that Barton "avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including co-defendants."  (Doc. #32, p. 2).

Notwithstanding the prohibition against contact, Barton and Broeker continued to have nearly daily telephone communication.  Their calls were recorded by way of the St. Louis County Jail's recording system. Although they continued to caution each other that their calls were being monitored, the two spoke about the charges against them.  On multiple occasions, Broeker advanced the notion that T.Z. had intentionally ended his own life.  During one call, Broeker placed blame on T.Z.'s parents, disparaging them and stating that it was "no wonder" that T.Z. "killed himself."

In late July 2019, the government learned of Broeker and Barton's continued communications.  The government notified the United States Pre-Trial Services Office, which promptly filed a Petition for Action on Conditions of Release.  (Doc. #61).  Pre-Trial Services requested that a warrant be issued for Barton's arrest.  Meanwhile, on July 24, 2019, attorney Mark Byrne entered his appearance on Broeker's behalf.[1]  (Doc. #60).

---

[1] The Office of the Federal Public Defender was granted leave to withdraw from representing Broeker following Byrne's entry.

2

Barton appeared before Magistrate Judge Noce on August 13, 2019 for a bond revocation hearing. (Doc. #65). Barton admitted to contacting Broeker repeatedly, despite the clear prohibition as part of the conditions of her release. Barton's bond was revoked and she was remanded to custody. (Doc. #66). Shortly thereafter, counsel for the government advised Broeker's counsel of the bond revocation, and the reasons therefor. The government also notified counsel of the recorded phone calls between Broeker and Barton *and provided copies of the same.* As a result, counsel for Broeker has been in possession of those recorded phone calls since August 2019.

Barton ultimately entered a plea of "guilty" to the Conspiracy to Distribute Fentanyl. (Doc. #72). She appeared for sentencing on January 15, 2020. (Doc. #95). The government moved for an upward departure pursuant to Section 5K2.1 alleging that the death of T.Z. occurred as a result of Barton's conduct. (Doc. #89). At sentencing, the government called multiple witnesses including J.F., T.Z.'s roommate and the last person to see T.Z. alive.

As Broeker's trial date approached, the government sent an "email" to counsel Mark Byrne on June 18, 2020. The government is prepared to produce that "email" for the Court's review. In that communication, the government sought to confirm that defense counsel had received all of the discovery to which he believed he was entitled. More specifically, the government wrote,

> Because you succeeded AFPD Nanci McCarthy as counsel for Mr. Broeker, I wanted to ensure that you have received all of the discovery to which Mr. Broeker is entitled. You should have received a DVD marked "Batch 1," which contains a number of documents, including written reports, search warrants, attestations of authenticity, and photographs. The DVD also includes recorded interviews of your client, Travis Broeker, and co-defendant Pamela Barton, along with 911 calls, Metro PCS records corresponding to your client's cell phone, and AT&T records corresponding to the victim's cell phone.
>
> You should also have received a separate disc marked "Digital

3

> Forensic Exam of Cell Phones." This disc contains materials extracted during a forensic examination of your client's cellular telephone, as well as the victim's cell phone. I believe you also received a disc of mapped cell site information, denoting the relative locations of those two telephones.
>
> As you are aware, I have also provided you with a number of discs of your client's telephone calls, recorded by the St. Louis County Justice Center during his incarceration. The government reserves the right to utilize any of those telephone calls at trial, either as exhibits or for impeachment purposes.

Included among the photographs provided in discovery was a photograph of a composition book recovered from T.Z.'s room on the morning he was found deceased. The government received no response to its inquiry regarding the discovery.

Beginning on July 1, 2020, the government provided Broeker with multiple notices of expert witness testimony. The government also requested from defendant notice of any alibi defense, notice of any expert testimony, and for reciprocal discovery. The government did not receive a written response to these inquiries.

On or about July 15, 2020, counsel for the government received a telephone call from witness J.F., who will testify at trial. J.F. reported that he had received a call from a person identifying himself as Broeker's attorney. J.F. willingly spoke with the attorney, who asked a series of questions regarding T.Z.'s state of mind. More specifically, the attorney asked J.F. whether, in his opinion, T.Z. seemed "sad" or "depressed" before he died. According to J.F., he expressed his opinion that T.Z. seemed upset. At one point, according to J.F., Broeker's attorney asked whether J.F. believed that T.Z. may have committed suicide.

Within days of speaking with J.F. by telephone, defense counsel served J.F. with a trial subpoena.

On July 17, 2020, the government moved *in limine* to exclude from trial any suggestion

that T.Z. had committed suicide. The government set forth various factual and legal grounds for its motion. (Doc. #123).

On July 20, 2020, defense counsel Matt Sander sent an "email" to counsel for the government inquiring, for the first time, about the composition book recovered from T.Z.'s bedroom. Aside from a greeting and description of the notebook, the "email" read, in its entirety, "Was there anything in that notebook?" Because counsel for the government had not reviewed the notebook, she wrote "Not that I know of." Defense counsel did not follow up and did not request a copy of the notebook. He did, however, apparently contact Detective Joe Percich, who served as the primary detective in the St. Louis County Police Department's investigation. Detective Percich invited defense counsel to schedule an appointment to view the notebook. Defense counsel failed to do so. Detective Percich also made a photocopy of each page of the composition book on which writing appeared, and provided the same to the government. In an "email" dated August 25, 2020, the government forwarded the same to counsel for defendant. More specifically, the government wrote, "Attached to this email is the copy of the notebook you requested. My understanding is Detective Percich was waiting for you to contact him to obtain a copy. Detective Joe Percich's contact information is below." The government included Detective Percich's direct phone line to his desk.

On August 27, 2020 – more than six weeks after the government filed its motion *in limine* seeking the exclusion of any speculation that T.Z. committed suicide– defense counsel filed a response claiming, among other things, that counsel was "not at this time aware of a 'suicide defense." (Doc. #128). Counsel acknowledges "several mentions of T.Z.'s potential mental illness in the voluminous discovery" and that counsel "interviewed J.F. . ., at which time Counsel had reason to believe that perhaps T.Z.'s death was not accidental." (Doc. #128, p. 2). Counsel implies

5

that the government has not provided full discovery as to the composition book, making the misleading claim that he "was also informed that there are additional pages in this composition book that still have not been disclosed to Defendant." (Doc. #128, pp. 2-3).  The government hereby makes its reply.

## ARGUMENT

The sole issue presented by way of the government's motion *in limine* re: admission of certain evidence is whether Broeker is entitled to elicit at trial any evidence or opinions that T.Z. "committed suicide."  Although his response to the motion suggests that defense counsel was unaware of the "suicide defense" until the government filed its motion, this claim is specious at best.  First and foremost, defense counsel has been in possession of Broeker's recorded jail telephone calls since August 2019.  Those calls contain repeated instances in which Broeker speculates to Barton and to his grandmother that T.Z. intentionally ended his own life.  To state the obvious, the government has no way of knowing whether defense counsel actually *listened* to any of the recorded calls, nor is the government charged with responsibility to ensure that he does so.  Not only did the government provide the recorded calls to defense counsel, the government communicated with defense counsel in June 2020 to reiterate that the government had "provided [counsel] with a number of discs of your client's telephone calls, recorded by the St. Louis County Justice Center during his incarceration. The government reserves the right to utilize any of those telephone calls at trial, either as exhibits or for impeachment purposes."  The government has no further obligation as it relates to these recorded calls.  If Broeker declined to share his theory that T.Z. committed suicide with his own attorneys, such conduct is not attributable to the government.

Candidly, counsel's claim that he was unaware of any "suicide defense" flies directly in the face of his own written admissions.  For example, in his response to the instant motion, counsel

6

acknowledges that there "were several mentions of T.Z.'s potential mental illness in the voluminous discovery previously disclosed." (Doc. #128, p. 2). Apparently, counsel thought this information significant enough to question T.Z.'s friend and roommate, J.F., about the same. Counsel acknowledges that he interviewed J.F., and that following that conversation, he "had reason to believe that perhaps T.Z.'s death was not accidental." (Doc. #128, p. 2). Indeed, it was *in response to that very interview* that the government filed its motion *in limine.* (Doc. #123, p. 8). Having learned from J.F. that counsel had asked probing questions about T.Z.'s mental health – to include seeking J.F.'s uninformed opinion as to whether T.Z. might have killed himself – the government anticipated that Broeker may attempt improperly to inject similar speculation as to the manner of T.Z.'s death into the upcoming trial.

     In his response to the government's motion, Broeker wholly fails to address the government's arguments that evidence as to the manner of T.Z.'s death is legally irrelevant. He does not so much as suggest that the manner of death is an element of the offense. Similarly, Broeker does not address the government's assertion that any evidence as to the manner of T.Z.'s death lacks a proper foundation. He does not claim that J.F. (or any other person, for that matter) is qualified to render an opinion as to any mental health diagnosis or any condition from which T.Z. may have allegedly suffered at the time of his death. Broeker has denied that he intends to call an expert witness at trial.

     To the extent that Broeker may rely on the composition book seized from T. Z.'s room, Broeker is wholly unable to establish a proper foundation for the admission of the composition book. First, the pages are unsigned and the authorship of any particular entry is unknown. Any suggestion that T.Z. authored any entry is entirely speculative. Moreover, the entries are undated and, as a result, their temporal relationship to T.Z.'s death is unknown. It is

quite possible that the entries were made weeks, or even months, before T.Z. died. There is simply no evidence that any entry (or the entries collectively) are reflective of – or even relevant to – T.Z.'s state of mind on the date of his untimely death. In point of fact, one of the entries to which counsel refers omits the crucial fact that the entry is entitled "Bill's Story." To state the obvious, T.Z.'s name is not "Bill." Any suggestion that "Bill's Story" is autobiographical is purely speculative.

Perhaps most disturbing about Broeker's apparent intention to seek admission of the composition book is his specious claim that counsel "was informed that there are additional pages in this composition book that still have not been disclosed to Defendant" and that "the rest of the pages were not available electronically." This claim is patently false. The undersigned has spoken with both co-counsel and the lead detective responsible for the instant case. Both categorically deny making any such statement. In point of fact, Broeker has been provided with a copy of every page of the composition book on which there were markings. To be sure, the government did not photocopy dozens of blank pages. It did, however, invite defense counsel to contact Detective Percich to make arrangements to view the original composition book. To date, counsel has failed to contact Detective Percich. Counsel's failure to make arrangements to view this book is not attributable to the government and does not serve as any basis upon which counsel should be permitted to engage in a fishing expedition designed to disparage the victim and/or invite the jury to decide the case based upon improper factors.

Broeker suggests that the "length of time that this case has been pending, along with the limited time remaining before trial" entitles him to "wide discretion to question witnesses regarding any of the materials disclosed this close to trial." This assertion is not only wholly unsupported, it is meritless. Counsel has known of the existence of the composition book since

8

the date he took possession of the discovery from predecessor counsel. His failure to diligently investigate the case is not attributable to the government. Moreover, Broeker's remedy – if any – for this lack of preparation is a continuance, not a license to elicit otherwise inadmissible testimony or evidence.

## CONCLUSION

The government incorporates herein by reference the entirety of the argument made in its Motion in Limine Re: Admission of Certain Evidence and reiterates its position with respect to the irrelevance and inadmissibility of any speculation, opinion, or testimony as to the manner of T.Z.'s death. Broeker's response fails to address this legal argument and relies instead on misrepresentations and feigned ignorance. The government respectfully requests that the Court grant the government's motion in its entirety and enter an order prohibiting any mention – in voir dire, opening statement, or the questioning of witnesses – as to the *manner* of T.Z.'s death.

Respectfully submitted,

JEFFREY B. JENSEN
UNITED STATES ATTORNEY

/s/ Sirena Miller Wissler
SIRENA MILLER WISSLER #55374MO
NAUMAN WADALAWALA, #65252MO
Assistant United States Attorneys
111 South Tenth Street, 20th Floor
Saint Louis, Missouri 63102
(314) 539-2200
Sirena.wissler@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 1, 2020, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Mark J. Byrne and Matt Sander, Attorneys for Defendant.

                                      /s/ *Sirena Miller Wissler*
                                      SIRENA MILLER WISSLER #55374MO
                                      NAUMAN WADALAWALA, #65252MO