IN THE DISTRICT COURT OF EASTERN MISSOURI
UNITED STATES OF AMERICA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Cause No. 4:19-Cr-00207-HEA |
| Vs. | ) |
| | ) |
| TRAVIS BROEKER, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL
OR, IN THE ALTERNATIVE, FOR A NEW TRIAL
AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

COMES NOW, Matt Sander, Attorney at Law, and on behalf of Defendant respectfully moves this Honorable Court to enter an order for a judgment of acquittal on the "resulting in death" element of Count I, pursuant to Federal Rule of Criminal Procedure 29 or, in the alternative, for a new trial on all Counts, pursuant to Federal Rule of Criminal Procedure 33.

### BACKGROUND

During trial, at the close of the government's case, Mr. Broeker moved for acquittal on the grounds that no evidence had been presented by the government to support the "resulting in death" element to Count I. The Court denied Defendant's motion at that time, and Mr. Broeker hereby renews it in order to further preserve his argument. On September 17, 2020, after several hours of deliberation and posing several questions to the Court, the jury returned a guilty verdict on Counts I and II, along with the "resulting in death" element on the special verdict director for Count I. Within

1

fourteen days of the verdict, Defendant requested, and this Court granted, an additional two weeks to file post-trial motions. Defendant files these motions within that extension of time previously granted by the Court.

## ARGUMENT

"If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). The court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. Fed. R. Crim. P. 29(a). A motion for judgment of acquittal should be granted only where the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of any of the essential elements of the crime charged. *United States v. Mundt,* 846 F.2d 1157, 1158 (8th Cir. 1988). Here, the verdict must be set aside because insufficient evidence was presented at trial to establish that the drugs allegedly sold by Mr. Broeker in Count I of the indictment caused the death of T.Z.

Alternatively, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P 33(a). A district court is granted broad discretion in considering a motion for new trial. *See United States v. Campos,* 306 F.3d 577, 580 (8th Cir. 2002). A district court may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *Id.* (internal quotation marks and citation omitted). To this end, the evidentiary standard of review for new trials differs from the standard that is applied in a motion for judgment of acquittal.

> When a motion for new trial is made on the ground that the verdict is contrary to the weight of the evidence, the issues are far different from those raised by a motion for judgment of acquittal. The question is not whether the defendant should be acquitted outright, but only whether he should have a new trial. The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses. If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury. This authority should be exercised sparingly and with caution; nevertheless, the trial court has wide discretion in deciding whether to grant a new trial in the interest of justice.

*United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980).

An improper statement by a prosecutor during closing argument may mandate a new trial. *Id.* A new trial is not required unless it would be so gross as probably to prejudice the defendant. *See United States v. Splain*, 545 F.2d 1131, 1135 (8th Cir. 1976). The defendant would be deemed prejudiced only if the jury verdict could have been affected by the argument. *Lincoln* at 1321-1322. One important factor to consider in determining whether a closing argument is so prejudicial to require reversal of the conviction is the amount of evidence indicating defendant's guilt. *Splain* at 1135. …[I]f the evidence of guilt is weak or tenuous, the existence of prejudice is more easily assumed. *Id.* The prosecutor, as a representative of the Government in a criminal trial, must never lose sight of his duty to secure justice, to seek acquittal of the innocent and conviction of the guilty. *Id.* While he may prosecute vigorously, he must do so fairly. *Id.*

3

Here, the Court should sustain Mr. Broeker's motion for a new trial because 1) the weight of the evidence does not support a conviction, 2) the Government's improper closing argument was improper and unfairly prejudiced the jury, and 3) several of the COVID-19 procedural changes to the jury trial process hindered defense counsel's ability to effectively represent Mr. Broeker.

**I.   THE GOVERNMENT DID NOT PRESENT SUFFICIENT EVIDENCE TO CONVICT MR. BROEKER OF THE "RESULTING IN DEATH" ELEMENT OF COUNT I.**

The Court should enter a judgment of acquittal because, even taken in the light most favorable to the government, there was insufficient evidence at trial to establish beyond a reasonable doubt that T. Z.'s death resulted from the use of fentanyl distributed by Mr. Broeker.  To be sure, the government presented an impressive number of witnesses with distinguished resumes.  However, the actual substance of the witnesses' testimony can be boiled down to whether fentanyl was distributed by Mr. Broeker to T.Z., and whether T.Z. died from the use of fentanyl.  None of the witnesses could testify as to whether the drugs causing T.Z.'s death were the same substance(s) allegedly sold to T.Z. by Mr. Broeker.  Nor did the government present any physical or documentary evidence establishing such a nexus.  Because no evidence was presented to prove that the fentanyl distributed by Mr. Broeker was the same fentanyl that caused T.Z.'s death, no reasonable jury could find Mr. Broeker guilty of the death element to Count I beyond a reasonable doubt.

**II.   ALTERNATIVELY, MR. BROEKER SHOULD BE GRANTED A NEW TRIAL PURSUANT TO RULE 33.**

In the event the Court denies Mr. Broeker's motion for judgment of acquittal, the Court should grant his motion for a new trial for three reasons: 1) the cumulative weight of the evidence does not support a judgment of guilt, 2) the government's closing argument was improper and unfairly prejudiced the jury, and 3) the procedures utilized for COVID-19 safety precautions resulted in unfair trial practices that unfairly prejudiced the outcome of Mr. Broeker's case.

**A. The Weight of the Evidence Does Not Support a Conviction.**

Assuming that the evidence, viewed with all inferences in the government's favor, was sufficient for a reasonable jury to find guilt beyond a reasonable doubt, the verdict was nonetheless against the cumulative weight of that evidence. The Court is permitted to assess the credibility of each witness and is not required to view the evidence in the light most favorable to the government in deciding a Rule 33 motion for a new trial. Considering the totality of the evidence, the following points become clear:

1) None of the expert witnesses presented any evidence linking the drugs allegedly sold by Mr. Broeker to the drugs causing T.Z.'s death.

2) None of the government's witnesses testified that they could exclude the possibility that T.Z. obtained the drugs causing his death from someone besides Mr. Broeker.

3) None of the government's witnesses presented evidence linking the drugs in the rubber ball to the capsules Mr. Broeker allegedly sold to T.Z.

4) Testimony by the government's witnesses during cross examination demonstrated that T.Z. had access to other sources of drugs besides Mr. Broeker.

5) Testimony by the government's witnesses during cross examination demonstrated that T.Z. had access to alternative communication methods, such as Facebook messenger, that did not require T.Z. to use his cellphone.

6) Testimony by the government's witnesses during cross examination demonstrated that several electronic devices were present in the common area of the home where T.Z. resided, and that those devices were not searched for communication involving drug activity.

7) Testimony by the government's witnesses during cross examination demonstrated that several hours of T.Z.'s whereabouts were unaccounted-for on the night prior to his death.

8) Testimony by the government's witnesses during cross examination demonstrated that Joseph Fedke located and confiscated the only evidence of drugs linked to Mr. Broeker, and that those drugs remained inaccessible to T.Z. at the time of his death.

**B. The Government's Closing Argument was Improper.**

Independent of any other deficiencies, the argument presented by the Government at the close of all evidence unfairly prejudiced the jury and mandates a new trial. During its closing argument, the government presented facts not in evidence to connect the drugs in the rubber ball on T.Z.'s nightstand with the drugs allegedly sold to T.Z. by Mr. Broeker. Specifically, the government stated at close that T.Z. removed drugs from the capsules allegedly sold by Mr. Broeker, that T.Z. used some of the drugs he obtained from Mr. Broeker, and that T.Z. placed the rest of the drugs he removed from

6

those capsules in the rubber ball later found on T.Z.'s nightstand. Absolutely no evidence was presented at trial to support these facts. The government relied heavily on these facts during its close, all the while knowing that no testimony was adduced to support them. In finding Mr. Broeker guilty of the death, the jury must have relied on these facts because they were the only connection presented by the government linking the sale to the death. And in a case such as this, where there was no evidence presented to link the drugs sold to a resulting death, the jury's reliance on the government's improper statement is highly prejudicial. Not only should this prosecutorial behavior be discouraged, but Mr. Broeker should also be given a new trial with a jury that is not influenced by this improper argument.

### C. The Special Court Procedures Implemented for COVID-19 Resulting in Unfair Trial Practices that Prejudiced Mr. Broeker's Case.

Due to the ongoing COVID-19 pandemic, the Court enacted many new procedures with the intention of preventing the spread of disease during the course of a jury trial. While Mr. Broeker was willing to comply with new procedural changes to have his day in Court, he had no way to foresee how such changes would unfairly hinder his defense. Changes included, but were not limited to, 1) the use of plexiglass dividers between Attorney Mark Byrne, Defendant Travis Broeker, and Attorney Matt Sander, 2) the requirement of the use of facemasks by all parties, counsel, witnesses, jurors, and court personnel, 3) the preclusion of virtually all efforts to approach witnesses or the bench, 4) the preclusion of the attorneys' ability to leave the vicinity of the podium during witness testimony, 5) the inability for attorneys to see all jurors while questioning witnesses, 6)

the inability for attorneys to present physical exhibits to witnesses, 7) the inability for attorneys to conduct argument outside the presence of the jury, and 8) bifurcated and abridged voir dire.

This list is not meant to be exhaustive. It is merely a list of the most important changes that, upon reflection, undoubtedly affected the fairness of Mr. Broeker's trial. And while these changes effected both parties in the presentation of their cases, there are vast differences in the structure of a prosecution and a defense. The right to a fair trial also lies with Mr. Broeker, who as a criminal defendant, is entitled to many Constitutional rights not belonging to the government. And because personal liberty is affected by the outcome in criminal cases, fairness is crucial at all levels of the trial, including the implementation of procedural changes.

While this list does not include all the factors impacted by procedural changes, below are specific examples where COVID-19 protocols affected the fairness of Mr. Broeker's trial:

1) Attorney Sander, who was working close with Attorney Byrne throughout Mr. Broeker's case, was effectively precluded from communicating with Attorney Byrne throughout the first day of trial due to the use of plexiglass and prescribed seating arrangements. Nobody at the defense table was allowed to sit across from each other, or next to one another, due to the arrangement of the plexiglass. As such, communication among the personnel at the defense table was impossible during the first day of trial, and significantly hindered thereafter. The government's table, although separated from side to side, was permitted to arrange

8

themselves across from one another, without the separation of plexiglass. Thus, they were not subject to the same restrictions as the defense table, and the government personnel possessed a communication advantage throughout the trial.

2) The use of facemasks by jurors severely hindered defense counsel from reading the facial expressions of jurors throughout the case. This is something that is crucial to the implementation and adjustment of trial strategy, and hindered defense counsel's ability to make fully-informed strategy decisions.

3) The seating arrangements of the jury and restriction of attorney movement during cross examination prevented defense counsel from seeing the jurors' reactions to witness testimony. Again, this hindered defense counsel's ability to adjust trial strategy.

4) The use of facemasks by witnesses prevented jurors from fully evaluating the credibility of witnesses. Facial expressions contain a great deal of their own communication, and when a case involves many government witnesses and no defense witnesses, the ability of jurors to weigh credibility is paramount.

5) The use of facemasks by attorneys hindered defense counsel's ability to communicate disbelief and other expressions when cross examining witnesses. Facial expression plays a much bigger role in cross examination than on direct, due to the leading nature of the questions and hostility of witnesses. Defendant was subject to a greater disadvantage than the government in this regard.

6) The inability of defense counsel to approach witnesses during cross examination detracted from the ability to effectively impeach government witnesses. Due to

9

movement restrictions, witnesses were separated from their cross examiner by twenty feet of space and several large pieces of furniture.  The ability to approach a witness and confront them with physical evidence of their dishonesty is crucial to effective cross examination.  Because this was not allowed, it created a disadvantage for the defendant.

7) The disfavor of sidebar was many times a disadvantage for Mr. Broeker.  The first example coming in voir dire, when defense counsel asked to approach the bench regarding a government objection.  At that time, defense counsel's request was denied, and the Court admonished defense counsel both for the request itself and for the questions posed during voir dire.  Ordinarily this could be handled at sidebar, outside the presence of the jury.  But because this was done in open court, it undoubtedly affected the jurors' credibility determination of defense counsel, potentially throughout the entire trial.  The same applies to arguments made over the government's innumerable objections, many of which likely influenced the jury in improper ways.

In sum, the right to trial lies with the defendant. And while Mr. Broeker was willing to attempt a trial during COVID to have his day in court, he is still entitled to a fair trial no matter the circumstances.  While many of the COVID changes were anticipated and adjusted-for in preparation of this case, there were simply too many factors to consider to fully understand what impact new procedures would have on his trial.  And as seen above, trying Mr. Broeker's case with these new procedures placed him at an unfair disadvantage that likely prejudiced the outcome in his case.

10

## CONCLUSION

For the foregoing reasons, Mr. Broeker respectfully requests the Court grant his Motion and enter a judgment of acquittal on the "resulting in death" element in Count I. In the alternative, Mr. Broeker requests the Court order a new trial on all counts.

WHEREFORE, Defendant hereby moves for judgment of acquittal, a new trial, and any other relief this Honorable Court deems just and proper.

Respectfully Submitted,

***FISCHER & BYRNE, L.L.C.***

*/s/ Matt Sander*

_____
MATT SANDER, #70344MO
7751 Carondelet Ave., #202
Clayton, MO 63105
(314)231-0777 Office
(844)273-9163 Fax
matt@fischerandbyrne.com

## **CERTIFICATE OF SERVICE**

The above-signed certifies that a copy of the foregoing was served via electronic filing to the United States District Court of Eastern Missouri on this 15th day of October, 2020.